**GAVIN ROZZI**
PO Box 1232
Forked River, NJ 08731
Phone: (609)-222-4161
gr@gavinrozzi.com

Plaintiff, *Pro Se*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| GAVIN ROZZI<br><br>Plaintiff,<br><br>v.<br><br>EFPTR, LLC, a New Jersey Limited Liability Company d/b/a EASTERN FINANCIAL PARTNERS, ADAM CUDDYER, individually and in his capacity as an officer of EFPTR, LLC, FRANK VENEZIO, individually and in his capacity as an agent of EFPTR, LLC, MICHAEL FROIO, individually and in his capacity as an agent of EFPTR, LLC, JOHN DOE TELEMARKETERS FROM (848)-213-9848 (fictitious), JOHN DOE TELEMARKETERS FROM (848)-236-0031 (fictitious), ABC ENTITIES 1-10 (fictitious),<br><br>Defendants. | Civil Action<br><br>No.: 3:24-cv-_________<br><br>**COMPLAINT**<br>**JURY TRIAL DEMANDED** |

Plaintiff, GAVIN ROZZI, appearing *pro se*, as and for his complaint against Defendants EFPTR, LLC d/b/a EASTERN FINANCIAL PARTNERS, ADAM CUDDYER, individually and in his capacity as an officer of EFPTR, LLC, FRANK VENEZIO, individually and in his

capacity as an agent of EFPTR, LLC d/b/a EASTERN FINANCIAL PARTNERS, MICHAEL FROIO, individually and in his capacity as an agent of EFPTR, LLC d/b/a Eastern Financial Partners, JOHN DOE TELEMARKETERS FROM (848)-213-9848 (fictitious), JOHN DOE TELEMARKETERS FROM (848)-236-0031 (fictitious), and ABC ENTITIES 1-10 (fictitious) (collectively, "Defendants"), alleges as follows:

## **PRELIMINARY STATEMENT**

This is an action for statutory damages, injunctive relief, and exemplary damages under the Telephone Consumer Protection Act (TCPA), 47 U.S.C. 227 *et seq.*, and New Jersey's Do Not Call Law under the Consumer Fraud Act, N.J.S.A. 56:8-128, arising from the unlawful, telemarketing practices of the Defendants.

EFPTR, LLC d/b/a EASTERN FINANCIAL PARTNERS ("Eastern Financial") presents itself as a business headquartered in Red Bank, New Jersey specializing in restructuring high-interest loans for small businesses. Eastern Financial's business model relies on direct involvement from its officers and agents in the telemarketing activities, demonstrating a calculated scheme to circumvent TCPA compliance. However, as alleged in the FundFi Merchant Funding, LLC v. MCA Resolve LLC case in Nassau County, NY Supreme Court, Index No. 613440/2023, Eastern Financial Partners is part of a pattern of unscrupulous debt relief schemes designed to deceive small business owners. The FundFi case demonstrates how Eastern Financial Partners, and related entities mislead merchants into breaching their contracts with legitimate lenders by making false promises of debt reduction, leaving the merchants in financial ruin while Eastern Financial Partners collects exorbitant fees. Now, they have seen fit to start bombarding New Jersey telephone numbers with unsolicited marketing calls to drum up business for themselves while flouting federal and state regulations.

This lawsuit is brought before the court to address a clear and unequivocal violation of the TCPA and its enabling regulations by the Defendants. The TCPA prohibits calls to residential cell phones using an automatic telephone dialing system (ATDS) except for "emergency purposes" or with the "prior express consent" of the called party. 47 C.F.R. § 64.1200(a)(1). Calls that introduce an advertisement or constitute telemarketing require "prior express written consent." 47 C.F.R. § 64.1200(a)(2). The TCPA enabling regulations also prohibits sending telephone solicitations to person who have registered their number on the National Do Not Call Registry under 47 C.F.R. § 64.1200(c)(2).

Plaintiff has been subjected to unauthorized and unsolicited telemarketing calls sent to their personal cellular phone without consent and has been annoyed & inconvenienced by such messages. Plaintiff brings this action to seek redress for these violations.

## THE PARTIES

1. Plaintiff, GAVIN ROZZI is an adult individual who resides in the District of New Jersey. At all times relevant to this action, Plaintiff is and has been a "person" within the meaning of 47 U.S.C. § 153(39). Plaintiff has been inundated with unsolicited telemarketing calls on his personal residential cellular phone sent on behalf of the Defendants and others.
2. Defendant, EFPTR, LLC d/b/a EASTERN FINANCIAL PARTNERS (hereinafter "Eastern Financial Partners or "Eastern Financial") is a business entity engaged in providing fraudulent "debt restructuring" services with a registered office listed at 52 Hartshorn Dr. Colts Neck, NJ 07722. Eastern Financial additionally maintains a principal place of business that is listed at 125 Half Mile Road, Suite 200, Red Bank, NJ 07701,

and posts job listings for in-person positions in Boca Raton, FL. This legal entity is the successor entity to a predecessor corporation known as ALLIANCE FUNDING, LLC, and this name change became effective on February 6, 2024, according to corporate records filed with the New Jersey Department of State.

3. Defendant, ADAM CUDDYER is the Registered Agent of EFPTR, LLC and also served as the Registered Agent of EFPTR, LLC's predecessor entity, ALLIANCE FUNDING, LLC. As the Managing Member and owner of this corporate entity, CUDDYER is listed as the sole officer and director of same according to corporate records filed with the New Jersey Department of State and has described himself as an "alternative finance broker." As the responsible corporate officer of EFPTR, LLC., CUDDYER is vicariously liable for the conduct of his agents and employees complained of herein under the responsible corporate officer doctrine or, in the alternative, directly liable for same as he ratified, acquiesced and authorized the unlawful telemarketing activities complained of herein. CUDDYER's personal residence is listed at 52 Hartshorn Dr. Colts Neck, NJ 07722, which is the same Registered Office address of EFPTR, LLC.

4. Defendant, FRANK VENEZIO is a Finance Manager with Eastern Financial Partners. Based on his public LinkedIn profile and other documentation, VENEZIO oversees the company's marketing and sales activities, including the illegal telemarketing practices described herein. VENEZIO is the individual whose voice appeared on the September 3, 2024 telemarketing call to Plaintiff, as he is the only person named Frank publicly associated with Eastern Financial Partners and its Red Bank, New Jersey offices. This individual personally participated in the unlawful practices noted herein and is the same

person identified as “Frank from Eastern Financial” in the telemarketing voicemail received by Plaintiff.

5. Defendant, MICHAEL FROIO is a Finance Manager with Eastern Financial Partners. Based on his public LinkedIn profile and other documentation, FROIO oversees the company’s marketing and sales activities, including the illegal telemarketing practices described herein. FROIO is the individual whose voice appeared on one of the telemarketing calls to Plaintiff on September 23, 2024. This individual personally participated in the unlawful practices noted herein and is the same person identified as “Michael from Eastern Financial” in the telemarketing voicemail received by Plaintiff that is the basis of this lawsuit. Upon information and belief, FROIO is based out of the Boca Raton, FL office of Eastern Financial.

6. Defendant JOHN DOE TELEMARKETERS FROM (848)-213-9848 are individuals whose true identities are currently unknown to the Plaintiff who participated in the illegal activities complained of herein. These Defendants may have participated in, contributed to, or aided and abetted the wrongful actions described herein. Once the true identities of these individuals are ascertained, Plaintiff will seek leave to amend the complaint to include their proper names and capacities. Plaintiff believes that the individuals behind the calls from (848)-213-9848 were acting as the agents of the individuals and / or legal entity behind Eastern Financial Partners, or in the alternative, individually liable for the conduct complained of herein.

7. Defendant JOHN DOE TELEMARKETERS FROM (848)-236-0031 are individuals whose true identities are currently unknown to the Plaintiff who participated in the illegal activities complained of herein. These Defendants may have participated in, contributed

to, or aided and abetted the wrongful actions described herein. Once the true identities of these individuals are ascertained, Plaintiff will seek leave to amend the complaint to include their proper names and capacities. Plaintiff believes that the individuals behind the calls from (848)-236-0031 were acting as the agents of the individuals and / or legal entity behind Eastern Financial Partners, or in the alternative, individually liable for the conduct complained of herein.

8. Defendant ABC ENTITIES 1-10 are fictitious business entities whose identities and involvement in the unlawful telemarketing activities described in this Complaint are presently unknown to Plaintiff. Upon information and belief, these entities are affiliates, agents, contractors, or business partners of the named Defendants, including EFPTR, LLC d/b/a Eastern Financial Partners, and they participated in, facilitated, or otherwise contributed to the telemarketing calls at issue. These entities may have provided technology platforms, call center services, lead generation, customer contact solutions, or other services essential to the execution of the illegal telemarketing scheme. Plaintiff reserves the right to amend this Complaint to add or substitute the true identities of these ABC Entities as they are revealed through discovery.

9. Defendants acted through their agents, affiliates, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

**JURISDICTION AND VENUE**

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the case arises under the laws of the United States. Specifically,

Plaintiff's primary claims for relief are predicated upon the TCPA, 47 U.S.C. § 227 *et seq.*, a federal statutory law. Although damages may not exceed $75,000, this Court retains subject matter jurisdiction due to the federal question presented under the TCPA

11. Supplemental jurisdiction over Plaintiff's state law claims is appropriate under 28 U.S.C. § 1367, as the state law claims are so related to the TCPA claims that they form part of the same case or controversy and derive from a common nucleus of operative fact.
12. Pursuant to 28 U.S.C. § 1391(b), venue is proper in this district because the Defendant conducts business within Monmouth County and maintains a Registered Office and principal place of business there. Additionally, Defendants VENEZIO and CUDDYER are residents of Monmouth County. A substantial part of the events or omissions giving rise to the claim occurred in this district and vicinage.
13. This Court also has personal jurisdiction over any out-of-state Defendants whose actions, in concert with, and acting as agents of EFPTR, LLC d/b/a EASTERN FINANCIAL PARTNERS, were intentionally directed at residents of New Jersey, causing harm within the state.

## STATUTORY BACKGROUND

14. The TCPA makes it unlawful to make calls to any cellular or residential line using an artificial or prerecorded message, or an automatic telephone dialing system absent prior

express consent. *See* 47 U.S.C. § 227(b); In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 F.C.C. Rcd. 1830, 1844 (2012).

15. The TCPA provides a private civil cause of action to persons who receive such automated or pre-recorded calls. *See* 47 U.S.C. § 227(b)(3).

16. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. It ordered:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. [] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service. []"

In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

## FACTUAL AVERMENTS

**The Unlawful Telemarketing Call Placed to Mr. Rozzi's Personal Cellular Phone**

17. Defendant, EFPTR, LLC ("Eastern Financial"), acting under the control of Defendant CUDDYER is operating a business that purportedly operates a business debt restructuring service based out of Red Bank, New Jersey and Boca Raton, Florida.

18. On their public facing website, Eastern Financial lists its headquarters as 125 Half Mile Road, Suite 200, Red Bank, NJ 07701, an office space leased through Regus, a shared office provider known for offering temporary and virtual business addresses. The use of a Regus office underscores the fly-by-night nature of the operation, as such spaces are often associated with businesses seeking to create the illusion of legitimacy without maintaining a permanent physical presence. Additionally, EFPTR, LLC posts job listings

for in-person positions in a Boca Raton, FL location that involve outbound telephone outreach to potential customers.[12]

19. Further investigation reveals that Defendants FRANK VENEZIO and MICHAEL FROIO, both who work for Eastern Financial as a Finance Managers, controls much of the company's marketing and operations. They both have played active roles in the company's outbound telemarketing activities.

20. The scale of Eastern Financial Partners' telemarketing operation is substantial, as evidenced by job postings that advertise positions for "Sales Representatives - Initial Contact Agents," emphasizing the large-scale and aggressive nature of the company's telemarketing activities. One recent job posting states that the company is seeking individuals who will be "responsible for contacting businesses via phone to introduce Eastern Financial Partners' debt settlement services" and "building and maintaining relationships with potential clients to understand their financial needs and challenges." The role is focused on outbound telemarketing, suggesting a high volume of cold calls designed to target businesses indiscriminately, without regard for compliance with the Do Not Call (DNC) registry requirements.

---

[1] *See* https://www.wayup.com/i-j-EFPTR-LLC-682984599652665/ (stating "Eastern Financial Partners is seeking motivated and enthusiastic individuals to join our dynamic team as Sales Representatives. In this role, you will be responsible for contacting businesses to offer our debt settlement services, building rapport with potential clients, and guiding them through the process of debt relief. This is an excellent opportunity for individuals who possess excellent phone skills, enjoy engaging with people, and thrive in a fast-paced environment.")

[2] Plaintiff is unaware if Defendants' Boca Raton office is still active, as their landlord commenced an action to remove Defendants for breaching lease terms, including nonpayment of security deposit. *See* G AND C 1489 BOCA INVESTORS LLC V EFPTR LLC, Palm Beach County, FL Circuit Court Case No. 50-2024-CA-008903-XXXA-MB

21. Variations of the telemarketing calls documented herein have been documented by internet users as coming from area codes in other states with identical prerecorded messages, including in Illinois and California, in addition to the New Jersey-based calls.

22. Plaintiff maintains a personal cellular telephone with a number ending in 0840 with a New Jersey area code, which he has used since 2013 as his primary means of personal communication and residential use.

23. Plaintiff's unpublished personal cell phone number is only identified by the last 4 digits in this complaint because it is covered by "Daniel's Law" as Plaintiff is an "authorized person" with an approved redaction request from the Office of Information Privacy within the Department of Community Affairs as defined by N.J.S.A. 47:1B-1 et seq. (P.L. 2021, c. 371). Plaintiff will provide the full unpublished telephone number directly to this Court if needed.

**The Unsolicited Telemarketing Calls From (848)-213-9848 Placed by Defendants**

24. Plaintiff began receiving unsolicited telemarketing calls from the Defendants on or about September, 2024.

25. Plaintiff has received multiple unsolicited phone calls from the Defendants from the number (848)-213-9848, which has a New Jersey-based area code.

26. On September 3, 2024, at 11:36 a.m. Plaintiff received a call on his personal cellular phone from the phone number (848)-213-9848. This call would prove to be the first of several unsolicited telephone solicitations received by Plaintiff from Defendants.

27. Plaintiff did not answer the call and was at work in Trenton, New Jersey at the time this call was received, which caused Plaintiff to suffer additional annoyance, inconvenience and aggravation.

28. Defendants left a voicemail on Plaintiff's phone that contained the following message following a brief pause that is one of the tell-tale signs of the use of an ATDS:

> Hi, this is Frank with Eastern Financial. We specialize in restructuring high interest business loans, reducing your daily or weekly payments by as much as 60% and reducing your payback principal by 30%. Give us a call at 888-357-0093 to discuss what we can do for you. Thank you.

29. Upon information and belief, "Frank from Eastern Financial" is Defendant FRANK VENEZIO, who is listed as a Finance Manager with Eastern Financial. VENEZIO personally participated in the conduct complained of herein and / or ratified same in his role with Eastern Financial, as he appeared on the prerecorded message transmitted to Plaintiff's personal cellular phone.

30. Plaintiff subsequently called back the phone number that left the voicemail, (848)-213-9848, and the line immediately began playing a prerecorded message in the form of "on-hold" music of the sort that is typically used in large business phone systems.

31. On September 7, 2024, Plaintiff sent an email to the address listed on the homepage of Eastern Financial Partners' website requesting a copy of the company's written Do-Not-Call policy, as required by 47 C.F.R. § 64.1200(d).

32. The email sent by Plaintiff, a copy of which is attached as "**Exhibit A**" read as follows:

> Hello,
> Could you please kindly provide me with a copy of the written do not call policy of Eastern Financial Partners?
> Thanks,
> Gavin
> [Exhibit A.]

33. Despite this simple request, Plaintiff never received a response from Eastern Financial Partners. This failure to provide a written Do-Not-Call policy is a violation of the TCPA and further demonstrates Defendants' disregard for their legal obligations.

34. Despite never getting a response to his inquiry about their do not call policy, Plaintiff continued to receive unsolicited, and unwanted communications from representatives of Eastern Financial, further evidencing the knowing and willful nature of the violations complained of herein.

35. On September 23, 2024, at 11:50 a.m. Plaintiff received a second unsolicited phone call from (848)-213-9848.

36. Like the last time, this call resulted in another voicemail promoting the services of Eastern Financial after a tell-tale pause:

> Hi, this is Michael with Eastern Financial. If your business is experiencing high daily or weekly payments to cash advance lenders, our firm specializes in reducing the balance up to 30%, and more importantly cutting the daily or weekly payments by 50% or more, injecting immediate cash back into your business. If this is something you feel your business can benefit from, please give us a call back at (888)-357-0093, again that's (888)-357-0093. We look forward to hearing from you and have a great day.

37. Upon information and belief, "Michael with Eastern Financial" is Defendant MICHAEL FROIO, who is listed as a Finance Manager with Eastern Financial. FROIO personally participated in the conduct complained of herein and / or ratified same in his role with Eastern Financial, as he appeared on the prerecorded message transmitted to Plaintiff's personal cellular phone.

38. On September 25, 2024, at 6:50 p.m. Plaintiff received a third unsolicited phone call from (848)-213-9848.

39. The call resulted in a voicemail left on message Plaintiff's personal cellular phone, with the same tell-tale pause prior to the following:

> Hey, this is Gabriel from Eastern Financial. If your company is currently being charged very high payments by a merchant cash advance lender, no matter if it's daily or weekly payments, we can reduce those payments by 50% or more and also save you up to 30% off the total amount owed. Even if you are already dealing with missed or temporary lowered payments from your lenders, we can still help. If you feel you can use our assistance, please call us at (888)-357-0093, again (888)-357-0093.

40. The true identity of "Gabriel from Eastern Financial" is currently unknown to the Plaintiff. This individual as one of the John Doe Telemarketers from (848)-213-9848 fictitious defendants, as this individual personally participated in the conduct complained of herein and / or ratified same in his role with Eastern Financial, as he appeared on the prerecorded message transmitted to Plaintiff's personal cellular phone.

41. On October 9, 2024, at 6:50 p.m. Plaintiff received a fourth unsolicited telemarketing call from (848)-213-9848.

42. The call resulted in a voicemail left on message Plaintiff's personal cellular phone, with the same tell-tale pause prior to the following:

> Hi, this is Daniel calling from Eastern Financial, we help small business owners lower their payments and restructure any merchant cash advances that they have taken out and are having a difficult time paying back. We thought it was possible you might have one or more of these loans that you pay on a daily or weekly basis and wanted to see if we could offer our help. You can reach us at (888)-357-0093, that's (888)-357-0093. Please give me a call at your earliest convenience so we can discuss your current situation. Thanks, and have a great day.

43. The true identity of "Daniel from Eastern Financial" is currently unknown to the Plaintiff. This individual as one of the John Doe Telemarketers from (848)-213-9848 fictitious defendants, as this individual personally participated in the conduct complained of herein

and / or ratified same in his role with Eastern Financial, as he appeared on the prerecorded message transmitted to Plaintiff's personal cellular phone.

**The Unsolicited Telemarketing Calls From (848)-236-0031 Placed by Defendants**

44. Around the same time as the previously noted calls, Plaintiff began receiving additional phone calls from the Defendants sent from an additional New Jersey-based telephone number, (848)-236-0031.

45. Plaintiff performed a lookup of (848)-236-0031 and found that this number was also registered with Onvoy/3 – Sinch, the same provider used by Defendants for their contact from (848)-213-9848.

46. The calls from (848)-236-0031 differed slightly, they resulted in missed calls made to Plaintiff's personal cellular phone, with these calls resulting in voicemails that were apparently empty, filled with dead air that provided absolutely no information about the true identity of the entity that was calling the Plaintiff or purpose of the call. Plaintiff believes that these voicemails constitute an artificial / prerecorded message generated by the operation of Defendants' ATDS.

47. On September 30, 2024, Plaintiff received the first call from (848)-236-0031 in a purported attempt to continue marketing Eastern Financial's services as a part of their telemarketing campaign. Plaintiff did not answer the call and no voicemail was left, nor did the caller ID provide any information to verify the identity of the entity upon which the calls were placed.

48. On October 16, 2024, Plaintiff received a second call from (848)-236-0031 in a purported attempt to sell Eastern Financial's products.

49. Plaintiff did not answer the call, a voicemail containing dead air was left, nor did the caller ID provide any information to verify the identity of the entity upon which the calls were placed.

50. On October 21, 2024, Plaintiff received a third call from (848)-236-0031 in a purported attempt to sell Eastern Financial's products. Plaintiff did not answer the call and no voicemail was left, nor did the caller ID provide any information to verify the identity of the entity upon which the calls were placed.

51. Plaintiff did not answer the call, a voicemail containing dead air was left, nor did the caller ID provide any information to verify the identity of the entity upon which the calls were placed.

52. Plaintiff was forced to spend time researching the phone number (848)-236-0031 and called it back to ascertain who it belonged to. Plaintiff called the number on October 23, 2024, where he spoke with a representative who confirmed that (848)-236-0031 is used by Eastern Financial Partners, and that this was the same entity that previously contacted Plaintiff.

53. The foregoing voicemail messages, telephone calls were clearly "telephone solicitations" as defined by the TCPA and enabling regulations, as they were attempts to solicit Plaintiff to purchase debt relief services from the Defendants and market / promote their services, *inter alia*, merchant cash advance debt restructuring and relief schemes to the Plaintiff.

54. At no time has Plaintiff provided his consent to receive communications from Defendants via an Automated Telephone Dialing System (ATDS) and artificial and / or prerecorded messages.

55. Plaintiff has never been a customer of Eastern Financial.

56. The calls were unwanted.

57. The calls placed by Defendants to Plaintiff were nonconsensual encounters.

58. The calls placed by Defendants were an attempt to sell Plaintiff merchant cash advance debt relief services.

59. Plaintiff's privacy has been repeatedly violated by these calls.

60. Plaintiff has been harmed by the acts of Defendant because their privacy has been violated and they were annoyed and harassed. In addition, the calls occupied their telephone lines, storage space, battery life, wear and tear, and bandwidth, rendering them unavailable for legitimate communication, including while driving, working, and performing other critical tasks.

61. The repeated, unsolicited calls made to Plaintiff over a period of several weeks show a deliberate and knowing violation of TCPA requirements, justifying treble damages.

**The Automated Telephone Dialing System Used by Defendants**

62. Defendants utilized Sinch's Application Programming Interface (API) to store and / or produce dial phone numbers automatically using a random or sequential number generator, implemented via the computer code that interacts with the Sinch API to facilitate outbound calls. This API system was configured to contact consumers without any manual dialing, enabling fully automated telemarketing operations.

63. The calls made to Plaintiff were placed using an ATDS as defined under the 47 U.S.C. § 227(a)(1), as they utilized a combination of hardware and software that can store or produce and dial telephone numbers to be dialed on a random / sequential basis using a

random number generator, without human intervention via the API-based programmatic dialing system implemented by Defendants. The tell-tale pause before each prerecorded message, different outbound and call back telephone numbers, impersonal nature of the messages and repetitive pattern of calls is further indicative of the use of an ATDS.

64. Under the TCPA, an ATDS is defined as "equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers." As clarified by the Supreme Court in Facebook, Inc. v. Duguid, 592 U.S. ___ (2021), for a system to qualify as an ATDS, the device must have the capacity to either store or produce telephone numbers using a random or sequential number generator and then dial those numbers.

65. Twilio Line Intelligence data confirms that the phone number (848)-213-9848 is registered with Onvoy/3 - Sinch, a telecommunications provider known for cloud-based messaging and voice API services. These services are designed to automate the process of contacting leads and customers by storing numbers in a system and dialing them automatically, making it clear that Defendants used an ATDS to contact Plaintiff.

66. Sinch, the provider of the telecommunication services for Defendants' phone numbers (848)-213-9848 and (848)-236-0031, offers a suite of customizable programmatic Application Programming Interfaces (APIs) designed for businesses to automate telemarketing and contact campaigns, including voice callouts, answering machine detection (AMD), and number validation. According to Sinch's API documentation, the platform enables high-volume telemarketing campaigns using programmable interfaces specifically designed for automated outreach. This

programmable system therefore meets the definition of an ATDS within the meaning of the TCPA.

**How Sinch's API Meets the Definition of an ATDS**

67. The Sinch API enables the use of Custom Callouts, allowing businesses to automate calls by specifying phone numbers to be dialed through "CalloutRequestParametersCustom" objects. These objects enable developers to initiate calls programmatically, using stored numbers and automated features such as Answering Machine Detection (AMD) to detect whether a human or answering machine answers the call. This functionality allows for fully automated telemarketing campaigns without manual intervention.

68. "SVAMLControl" objects are used within Sinch's API to facilitate the automatic dialing of numbers stored or produced by its system. Once a number is dialed, Answering Machine Detection (AMD) determines whether a human or machine answers the call, and the system automatically responds accordingly. This entire process, from number storage to call initiation, is conducted programmatically and stores or produces these numbers to be called using a random or sequential number generator, making the Defendants' implementation of Sinch's API a clear example of an ATDS as defined by the TCPA and the Facebook v. Duguid standard.

69. Importantly, Sinch's API and code implementation rely on stored phone numbers that are loaded into the system before any call is made. The callout is then executed based on the numbers stored in the system, meaning that the Sinch system only knows which numbers to dial based on the pre-existing list of phone numbers stored within the system.

70. Upon information and belief, the system used by Defendants qualifies as an ATDS because it operates using a random or sequential number generator. Specifically, the system assigns a Unique Identifier (UUID) to each telephone number within the program's memory, which facilitates the storage, indexing, and retrieval of numbers in a manner that is functionally indistinguishable from random or sequential number generation. Each phone number is organized and accessed through the automated system's processes, with the UUIDs serving as the core mechanism for selecting and dialing numbers.

71. This UUID-based process ensures that telephone numbers are stored, arranged, and called in either a sequential or random fashion without human intervention. The entire system, when viewed holistically, constitutes an ATDS because it performs the collective function of generating, storing, and dialing numbers. The UUIDs, while serving as identifiers, are integral to the process by which the system stores numbers to be called and initiates calls automatically and programmatically. This meets the TCPA's statutory requirement that the system have the capacity to use a random or sequential number generator for either storing or producing numbers to be called, aligning with the interpretation provided by the Supreme Court in Facebook v. Duguid.

72. Moreover, Defendants' system is capable of placing automated calls by retrieving UUID-assigned numbers from memory in both sequential and non-sequential order, thereby constituting a random or sequential generator within the meaning of the TCPA. Defendants' ATDS does not simply store and dial numbers based on lead generator / customer records but rather incorporates the use of UUIDs to systematize and automate calling patterns, ensuring that calls are placed without direct human intervention.

73. The computer code implementing the Sinch API specifically makes calls to the API by referencing these phone numbers stored by Defendants and loaded into the API via code. The stored numbers are called sequentially or programmatically, based on predefined conditions and using unique identifiers generated by the Defendants. This use of stored numbers through an automated system is exactly what is contemplated by the TCPA definition of an ATDS, as interpreted by Facebook v. Duguid.

74. In addition, Sinch's sample code demonstrates how a developer can implement the API to load a list of phone numbers into the system, programmatically validate those numbers using the E.164 validation method, and then initiate a series of automated calls without human intervention. This sample code further supports the conclusion that Sinch's API**,** as used by Defendants, is configured as an ATDS because it automates the process of retrieving stored phone numbers and placing calls to those numbers based on the instructions provided by the computer code, without manual input or dialing of individual numbers.

75. Defendants cannot claim inadvertence or error, as the use of Sinch's API was deliberate, programmed to contact preloaded phone numbers in a systematic fashion without prior consent from the Plaintiff.

**Defendants Fail to Scrub Against the Do Not Call List, Adopt a Written Do Not Call Policy or Secure Consent to Contact Plaintiff**

76. Plaintiff never provided his personal phone number ending in 0840 to Defendants, never had a relationship with Defendants, and never gave permission for Defendants to send any type of communication.

77. At all times relevant to this action, Plaintiff's personal cellular number was registered on the National Do Not Call List for over 10 years since 2013. A true and correct confirmation of this registration is attached as "**Exhibit B.**"

78. The communications made to the Plaintiff by Defendants had no mechanism to opt out, in further violation of the law and industry best practices.

79. Defendants' telemarketing activities are a nuisance and annoyance to Plaintiff.

80. The Plaintiff experienced significant annoyance and distress due to these unsolicited messages, which interrupted his daily activities and infringed upon his privacy. These messages represent a serious intrusion into Plaintiff's personal life and privacy, in violation of the protections provided by the TCPA.

81. Plaintiff does not have any interest or need for the products or services of Defendants.

82. Plaintiff does not use his personal cellular phone number ending in 0840 to run a business.

83. The foregoing acts and / or omissions by Defendants, is not merely coincidental but a calculated violation of statutory prohibitions and enabling regulations implemented to protect consumers from exactly this type of invasive electronic communication, demonstrating a knowing and willful violation of the law through the egregiousness of the conduct noted herein. Therefore, treble damages are warranted.

84. Upon information and belief, other entities or individuals may have contributed to the telemarketing violations described herein. Plaintiff reserves the right to add such parties as Defendants as their identities are revealed through discovery.

**COUNT I:**
**ILLEGAL USE OF AN AUTOMATED TELEPHONE DIALING SYSTEM IN VIOLATION OF THE TCPA ENABLING REGULATIONS**
**(47 C.F.R. § 64.1200(a)(1)-(2))**

85. Plaintiff incorporates by reference, repeats and realleges each and every prior paragraph of this Complaint as if fully set forth herein.

86. Defendants jointly, severally and individually violated 47 C.F.R. § 64.1200(a)(1)-(2) by using an ATDS to place telemarketing calls to Plaintiff's personal cellular phone without prior express consent.

87. The system used to place calls on behalf of the Defendants qualifies as an ATDS under the current legal framework. This system, employed to send multiple generic and impersonal telephone calls, is alleged to possess the operational capabilities of storing or producing, and dialing numbers, using a sequential and / or random number generator for each individual communication by way of the Defendants' implementation of the Sinch API.

88. The prerecorded messages sent to the Plaintiff's personal cellular phone were not personalized and did not indicate any form of individual targeting, thereby distinguishing them from list-mode calls which might fall outside the scope of the TCPA's illegal auto dialer prohibitions. Instead, these messages were part of a broader strategy implemented by the Defendant to indiscriminately reach multiple recipients, including those like the Plaintiff, who had no prior relationship or consent agreement with the Defendant.

89. The impersonal nature of the text messages, coupled with the ability to respond with a "STOP" to opt-out, further underscores the use of an ATDS in their transmission. This method of communication reflects an automated process designed for mass distribution

rather than individualized interaction, thus falling squarely within the prohibitions intended by the TCPA.

90. Plaintiff has suffered damages as a result of the foregoing acts and omissions of Defendants including annoyance, inconvenience and instruction into seclusion. Plaintiff is entitled to an award of $500 in statutory damages for each violation pursuant to 47 U.S.C. § 227(b)(3).

91. The court should award $1,500 in statutory damages for each violation because the violations were knowing and willful. *Id*

92. For each of these violations, the plaintiff seeks statutory damages of $1,500.

93. The court should enjoin such violations. *Id*

**COUNT II:**
**ILLEGAL USE OF AN ARTIFICIAL / PRERECORDED MESSAGE**
**IN VIOLATION OF THE TCPA ENABLING REGULATIONS**
**(47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(a)(2))**

94. Plaintiff incorporates by reference, repeats and realleges each and every prior paragraph of this Complaint as if fully set forth herein.

95. Defendants jointly, severally and individually violated 47 C.F.R. § 64.1200(a)(2) by using a prerecorded or artificial voice messages without consent and without an emergency purpose when initiating telemarketing calls to the Plaintiff's personal cellular phone seeking to sell the services of Eastern Financial Partners.

96. Defendant FRANK VENZIO controlled, authorized, and/or personally participated in initiating the illegal call and is therefore personally liable for the contents of the calls placed by "Frank from Eastern Financial."

97. The impersonal prerecorded messages sent to Plaintiff and left as voicemails constituted an artificial / prerecorded message and a solicitation within the meaning of 47 C.F.R. § 64.1200(a)(2).

98. Plaintiff has suffered damages as a result of the foregoing acts and omissions of the Defendants including annoyance, inconvenience and instruction into seclusion. Plaintiff is entitled to an award of $500 in statutory damages for each violation pursuant to 47 U.S.C. § 227(b)(3).

99. The court should award $1,500 in statutory damages for each violation because the violations were knowing and willful. *Id*

100. For each of these violations, the plaintiff seeks statutory damages of $1,500.

101. The court should enjoin such violations. *Id.*

**COUNT III:**
**ILLEGAL SOLICITATION OF PERSONS on the NATIONAL DO NOT CALL REGISTRY IN VIOLATION OF THE TCPA ENABLING REGULATIONS**
**(47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c)(2))**

102. Plaintiff incorporates by reference, repeats and realleges each and every prior paragraph of this Complaint as if fully set forth herein.

103. Defendants jointly, severally and individually violated 47 C.F.R. § 64.1200(c)(2) by initiating calls to Plaintiff while his personal cellular phone number was on the National Do Not Call Registry. Defendants failed to properly scrub against this registry when placing telemarketing calls to Plaintiff's personal residential cellular phone.

104. Plaintiff has suffered damages as a result of the foregoing acts and omissions of the Defendants including annoyance, inconvenience and instruction into seclusion.

Plaintiff is entitled to an award of $500 in statutory damages for each violation pursuant to 47 U.S.C. § 227(b)(3).

105. The court should award $1,500 in statutory damages for each violation because the violations were knowing and willful. *Id*

106. For each of these violations, the plaintiff seeks statutory damages of $1,500.

107. The court should enjoin such violations. *Id.*

**COUNT IV:**
**FAILURE TO ADOPT / PROVIDE A WRITTEN DO NOT CALL POLICY IN VIOLATION OF THE TCPA ENABLING REGULATIONS**
**(47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(d)(1))**

108. Plaintiff incorporates by reference, repeats and realleges each and every prior paragraph of this Complaint as if fully set forth herein.

109. Under 47 C.F.R. § 64.1200(d), entities that make telephone solicitations must maintain a written policy for maintaining a do-not-call list and must immediately provide this policy upon demand to any consumer who requests it.

110. On September 7, 2024, while investigating the unsolicited telemarketing calls from Eastern Financial, Plaintiff explicitly requested a copy of the Defendant's written do-not-call policy via email to info@easternfinancialpartners.com the publicly listed email contact address for Eastern Financial Partners.

111. The email was not returned as undeliverable, yet no response was provided by Defendants.

112. Despite the clear regulatory requirement to both adopt and provide the said written do not call policy, Defendants failed to provide the requested do-not-call policy to Plaintiff at that time or at any time thereafter.

113. Defendants' failure to provide the written do-not-call policy upon request not only constitutes a direct violation of 47 C.F.R. § 64.1200(d) but also demonstrates a disregard for the regulatory obligations imposed upon entities engaged in telephone solicitations. This failure has further infringed upon Plaintiff's rights under the TCPA to be informed about and to benefit from such a policy, which is designed to protect consumers from unsolicited calls.

114. Upon information and belief, while operating in New Jersey, Defendants have failed to adopt a written do-not-call policy as required by 47 C.F.R. § 64.1200(d) or any procedures to scrub against the National Do Not Call Registry when making outbound contacts. This failure is evidenced by the Defendants' inability to provide such a policy upon Plaintiff's request, suggesting not merely an oversight in provision but a fundamental lack of compliance in establishing such a policy in the first place – a separate and distinct violation of the TCPA's enabling regulations.

115. As a result of Defendants' actions, Plaintiff has suffered ongoing unwanted solicitations and has been denied the opportunity to fully understand and exercise his rights regarding the origination / limitation of such communications, directly resulting in continued disturbance and intrusion into his privacy.

116. Plaintiff further seeks statutory damages for each instance of Defendant's non-compliance with 47 C.F.R. § 64.1200(d), along with any other relief that the court deems just and proper.

117. The court should enjoin such violations. *Id.*

**COUNT V:**
**VIOLATION OF THE NEW JERSEY DO NOT CALL LAW UNDER THE NEW JERSEY CONSUMER FRAUD ACT**
**(N.J.S.A. 56:8-128 *et seq*.)**

118. Plaintiff incorporates by reference, repeats and realleges each and every prior paragraph of this Complaint as if fully set forth herein.

119. The New Jersey Do Not Call Law, as part of the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. 56:8-128 *et seq*., prohibits any person or entity from making or causing to be made any unsolicited telemarketing sales calls to any customer who has given notice of his wish not to receive such calls by registering with the no telemarketing call list maintained by the Federal Trade Commission.

120. At all times relevant to this action, Plaintiff's personal cellular phone was registered with the National Do Not Call Registry and protected under this law.

121. The NJCFA further provides that any violation of the New Jersey Do Not Call Law shall constitute an unlawful practice and a violation of the NJCFA.

122. The Defendants have knowingly and/or recklessly initiated telephone calls to Plaintiff and other individuals who have registered their telephone numbers on the National Do Not Call Registry, in violation of N.J.S.A. 56:8-128 *et seq*.

123. The calls placed by Defendants failed to accurately identify the telemarketer's name, the name and telephone number of the person on whose behalf the call is being made, and the purpose of the call in violation of N.J.S.A. 56:8-128 *et seq*.

124. Defendants failed to register as telemarketers with the Division of Consumer Affairs within the Office of the Attorney General and pay the requisite registration fee in violation of N.J.S.A. 56:8-121.

125. Defendants' conduct constitutes an unconscionable commercial practice, deception, and misrepresentation in violation of the NJCFA.

126. As a direct and proximate result of Defendants' violations of the NJCFA, Plaintiff and has suffered an ascertainable loss in the form of annoyance, inconvenience, intrusion into solitude and usage on his cell phone account.

127. Pursuant to the NJCFA, Plaintiff and others similarly situated are entitled to damages, declaratory and injunctive relief together with filing fees and reasonable costs of suit.

## COUNT VI: RESPONDEAT SUPERIOR

128. Plaintiff incorporates by reference, repeats and realleges each and every prior paragraph of this Complaint as if fully set forth herein.

129. At all times relevant herein, Defendant ADAM CUDDYER, was acting as an agent / servant / employee / owner / manager / human resources of Defendant EFPTR, LLC. and therefore, all negligent and intentional acts are imputed to him.

130. Defendant Cuddyer, as managing member / owner, actively participated in or ratified the telemarketing activities, including setting operational policies that facilitated the TCPA violations described herein and ratifying the conduct of the other individual defendants described herein.

131. These wrongful acts were committed by an officer, employer, partner, principal, owner, manager, director, employee or agent of the CUDDYER, acting within the scope of their employment or agency, where the employer or agent had the ability to control the other but failed or refused to do so and / or ratified their conduct.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

1. For each violation of the TCPA, Plaintiff seeks statutory damages totaling $1,500 per occurrence, cumulative across all applicable counts;
2. For prejudgment and postjudgment interest on the above amounts from September 3, 2024;
3. An injunction requiring the defendants to adopt a compliant do-not-call policy and cease use of automated telemarketing systems and failure to scrub against the National Do Not Call Registry in violation of the TCPA and NJCFA;
4. Granting Plaintiff leave to amend this Complaint to include additional parties or claims identified through discovery;
5. For such other and further relief as the Court may deem equitable and just.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues so triable.

## FED. R. CIV. P. 11 CERTIFICATION

I certify that to the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, and no other action or arbitration proceeding is contemplated. Furthermore, there are no other known necessary parties, other than any presently unknown defendants, designated herein as fictitious defendants.

**FED. R. CIV. P. 5.2(A) CERTIFICATION**

I certify that confidential personal identifiers have been redacted from documents now submitted to the court and will be redacted from all documents submitted in the future in accordance with Fed. R. Civ. P. 5.2(a).

**DEMAND FOR INSURANCE INFORMATION**

**PLEASE TAKE NOTICE** that pursuant to Fed. R. Civ. P. 26(a)(1)(A)(iv), Plaintiff hereby demands production of a copy of any and all insurance agreements under which Defendants may be covered to satisfy part of all of any judgment which may be entered in this matter and/or to defend, indemnify, or reimburse Defendants.

**DEMAND TO PRESERVE EVIDENCE**

**PLEASE TAKE NOTICE** that pursuant to Fed. R. Civ. P. 37(e) all Defendants are hereby directed to preserve any and all physical and electronic information pertaining in any way to Plaintiffs causes of action and/or prayers for relief, and to any defenses to same, including, but not limited to, electronic data storage, phone call recordings, closed circuit TV footage, digital images, computer images, cache memory, searchable data, emails, spreadsheets, employment files, memos, text messages, any and all online social or work related websites, entries on social networking sites (including, but not limited to, Facebook, Fiverr, YouTube, Twitter, TikTok, SoundCloud etc.), and any other information and/or data and/or things and/or documents which may be relevant to any claim or defense in this litigation.

[SIGNATURE TO FOLLOW]

Respectfully submitted,

*/s/ Gavin Rozzi*

GAVIN ROZZI
Plaintiff, *Pro Se*
PO Box 1232
Forked River, NJ 08731
Phone: (609)-222-4161
gr@gavinrozzi.com
Dated: October 28, 2024

**Gavin Rozzi**

| | |
|---|---|
| **From:** | Gavin Rozzi <gr@gavinrozzi.com> |
| **Sent:** | Saturday, September 7, 2024 4:38 PM |
| **To:** | info@easternfinancialpartners.com |
| **Subject:** | Request for written do not call policy |

Hello,

Could you please kindly provide me with a copy of the written do not call policy of Eastern Financial Partners?

Thanks,

Gavin



**Gavin Rozzi**

**From:** Verify@DonotCall.gov
**Sent:** Tuesday, October 17, 2023 6:46 PM
**To:** gr@gavinrozzi.com
**Subject:** National Do Not Call Registry - Your Registration Is Confirmed

Thank you for registering your phone number with the National Do Not Call Registry. You successfully registered your phone number ending in 0840 on November 13, 2013. Most telemarketers will be required to stop calling you 31 days from your registration date.

Visit https://www.donotcall.gov to register another number or file a complaint against someone violating the Registry.

*******************************************************************************************************************************

Please do not reply to this message as it is from an unattended mailbox. Any replies to this email will not be responded to or forwarded. This service is used for outgoing emails only and cannot respond to inquiries.

